IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DANA HINZMAN and
MICHELLE HINZMAN,

            Plaintiffs,

    v.

FOREMOST INSURANCE
COMPANY, GRAND RAPIDS,
MICHIGAN,

            Defendant.

6:22-cv-01798-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

       Plaintiffs own a home in Detroit, Oregon, which Defendant insures. In 2020, wildfires swept through the region, blazing within fifteen feet of Plaintiffs' home, and causing significant damage from smoke, soot, and ash. Plaintiffs bring state law claims for breach of contract and negligence per se against Defendant for failing to pay for the total alleged losses. Before the Court is Defendant's Motion for Partial

Page 1 – OPINION AND ORDER

Summary ("MPSJ"), ECF No. 9. For the reasons explained, Defendant's motion is DENIED.

## EVIDENTIARY OBJECTIONS

At the outset, the Court addresses Defendant's evidentiary objections. Defendant objects to certain evidence submitted by Plaintiffs in support of their opposition to Defendant's pending motion for partial summary judgment.

First, defendant objects to Plaintiffs' Counsel's declaration, paragraph 1, which attaches as exhibits email correspondence between Defendant's insurance adjustor, David Edwards, and ServiceMaster's Project Manager, Samantha Decker, about ServiceMaster's estimate for repairing damage to Plaintiffs' home. Gower Decl., ¶ 1, Ex. 1. Defendant objects on the grounds that the emails cannot be authenticated and that the contents constitute hearsay. Reply at 2. However, in response, Plaintiffs have filed the Declaration of Samantha Decker, authenticating the emails. Decker Decl., ECF No. 23. Defendant makes no further objections.

Second, Defendant objects to the portions of Plaintiffs' counsel's declaration which purport to attach as exhibits copies of statements made by Plaintiff's "unnamed expert witness[es]." Reply at 3; Gower Decl., ¶ 8, 9. In response, Plaintiff filed the Declarations of Paul Moreland and Philip Scott, ECF Nos. 21, 22. The statements offered opine on the legality of Defendant's conduct, and make scientific arguments on whether the attic insulation required replacement. Defendant's objections are well-taken. Legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment. *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

## BACKGROUND

Defendant issued Homeowners Insurance for Manufactured Homes Policy No. 0921964374 (the "Policy") to Plaintiffs for their property located in Detroit, Oregon (the "Property"). The Property includes a manufactured home and three detached structures consisting of a garage, a small playhouse, and a shed/bunkhouse with a half bathroom. Plaintiffs' primary residence is in Lebanon, Oregon. The insured property in Detroit is a second vacation home. On September 8, 2020, Plaintiffs' Property sustained smoke damage from wildfires in the Detroit area. There was no direct fire or charring to the property and no trees were lost, but the fire encroached within 15-20 feet of the dwelling. Maloney Decl., Ex. 1 at 2-4 (Hinzman Dep. 40:25-42:8). Plaintiffs notified Defendant of the loss on September 16, 2020, and the claim was accepted.

On October 8, 2020, Foremost Catastrophe ("CAT") adjuster Thomas Kim ("Kim") inspected the Property. Kim Decl. Ex. 2 at 0013. Kim took pictures of the only visible soot and ash, which was limited to particles at the entry points of the house, such as around door jams and windowsills. Kim Decl. ¶ 3, Ex. 3. Defendant's evidence includes those photographs which show minimal, but detectable, soot and ash. *Id.* Plaintiff Mr. Hinzman was shown the photographs during deposition and asked whether any soot and ash particles could be seen, and Mr. Hinzman was not able to identify soot and ash particles in the photos. *See generally*, Maloney Decl. Ex. 1 at 7-15 (Hinzman Dep. at 61, 62, 63, 67, 69, 70, 71, 73, 74).

During the October 8, 2020, inspection, Mr. Hinzman requested that the home be stripped to the studs to have all insulation completely replaced. Kim. Decl. ¶ 3, Ex.

2 at 0013. Defendant issued its initial estimate and payment the same day for $7,378.97. Kim Decl. ¶ 4; Ex. 4, at 1, 12. In the following weeks, Plaintiffs obtained three estimates for the remediation work. Servepro of Southeast Portland estimated $18,328.27. MPSJ at 4. Summit Cleaning and Restoration provided an estimate of $13,599. Kim Decl., ¶ 5. Finally, ServiceMaster of Salem sent an estimate of $12,213.89. *Id*.

The ServiceMaster final estimate did not include replacing the insulation in the attic, but, both Plaintiff and Defendant submit evidence that ServiceMaster stated that the attic insulation should be removed and replaced. *Id*; *see also* Decker Decl., Ex. 1 at 3 ("I would recommend . . . the insulation be removed and replaced in both the crawl and attic.); *Id*. ("While I did not find a lot of soot or ash there is a pretty heavy [smoke] odor."); *Id*. at 2 ("The odor in the home is strong and not a lot of ash evidence inside so I would think this would be a step to odor mitigation."). Mr. Hinzman stated that he had been concerned "from day one" that the attic or crawl space was damaged by the "smoke." Maloney Decl., Ex. 1 (Hinzman Dep. 20:14-19).

Defendant states that it decided not to make this replacement because there was "no indication of damage to that insulation, there were no supporting photographs showing any further damage, and in the adjuster's experience it would be extremely unusual and unlikely for there to have been damage to that insulation under the circumstances." MPSJ at 4; Kim Decl., ¶ 6. Defendant also based its decision on its understanding that "manufactured home[s] usually ha[ve] enclosed attic and crawlspace insulation," and that it "believed that the crawlspace insulation was enclosed by a plastic 'belly wrap,' and that the attic was an enclosed attic with

no access." *Id*. Defendant's post-remediation notes that Plaintiffs expresses concern that the "insulation in the attic of the mobile home and the belly" was damaged. Gower Decl., Ex. 3 at 3.  Defendant "explained that the belly of the mobile home is sealed with belly paper" and that replacement was not warranted. Id.  Defendant noted that it told Plaintiffs that "there is no attic space" and that "the insulation is in sealed bags that are laid in the narrow rafter bays," and that replacement was not warranted or necessary. *Id*.

Plaintiff's evidence is that ServiceMaser notified Defendant that the home had a "ridge cap" that will "pull ash, soot and hold odor." Decker Decl., Ex. 1 at 3.  Further, ServiceMaster explained that Defendant could test a sample of insulation to verify if smoke or soot penetrated it. *Id*. But, Defendant states that it told Plaintiffs that if *they* submitted "evidence or proof that the insulation had been damaged" it would "consider the submission as part of the adjustment of the claim and issue payment accordingly." Kim Decl., ¶ 7.

Plaintiff retained a licensed general adjustor of their own with specialty in service of over one hundred wildfire claims in Oregon, Alaska, and Washington. Gower Decl., ¶ 7, Ex. 6 (Moreland Decl. at 1). Moreland physically inspected Plaintiffs property and found that the home has an attic space; that the insulation was not in sealed bags but blown-in insulation; that the ventilation system into the attic is clearly visible from the exterior; and that the belly of the home is also vented. *Id*. at 2.  Moreland reports that the ventilation in the attic and belly of the mobile home continued to work, allowing smoke laden air to be ingressed into the two areas and that smoke penetrated the spaces. *Id*.

Evidence in the record is that smoke damage is a "covered loss" under Plaintiffs' policy with Defendant. Gower Decl., Ex. 2 (Kim Dep. 21:8-17). Defendant is trained that ventilation is an important aspect in determining the scope of damages on smoke losses because ventilation "circulates air throughout the home. Defendant "didn't look for specific ventilation points" at Plaintiffs' home, because it was "a given" that smoke permeated throughout the home. *Id*. at 21:6-9.

During remediation, Summit Restoration hired a third party to clean the clothes and textiles in Plaintiffs' home. However, Defendant contacted the service provider to stop the work because it had no documentation that the textiles needed cleaning and had not authorized payment. Kim Decl., ¶ 9. Defendant had an adjustor visit the home to smell the textiles. Id. The adjustor smelled all the bags of clothing and "found no smell." *Id*. Plaintiffs insisted that the textiles smelled of smoke and had them laundered. The cost totaled $1,072. First Amended Complaint ("FAC") ¶ 41.c.

Plaintiffs filed their lawsuit in Marion County and served Defendant with its original complaint on February 2, 2022. Later, Plaintiffs served an amended complaint on November 13, 2022. On November 17, 2022, Defendant removed the case to federal court. ECF No. 1.

Plaintiffs claim that Defendant breached its contract and breach of implied covenant to provide insurance to plaintiff for covered losses when it declined to pay for: the insulation remediation in the attic and underflooring of the home; the cleaning of textiles and electronics in the amount; the cleaning of textiles; structural damages in the amount of $50,619.51; the cost to replace non salvageable personal

property; and repairs to other structures. First Am. Compl., at 7. Plaintiffs also allege that Defendant negligent as a matter of law for violating ORS 746.230, et seq., Oregon's statutory scheme setting forth standards of conduct for insurers. See FAC (Claim III). Under its claim for Negligence Per Se, Plaintiffs assert non-economic damages in the amount of $50,000 and punitive damages not to exceed $1,000,000.

Defendant moves to dismiss Claim III: Negligence Per Se, arguing that (1) the Court must follow the Oregon Supreme Court decision in *Farris*, which clearly prohibits negligence per se claims under the circumstances here, and (2) there was no accompanying physical impact that caused the emotional distress. Alternatively, this Court should dismiss the alleged $1,000,000 in punitive damages because there is no clear and convincing evidence of malicious conduct or recklessly and outrageously indifferent conduct.

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2019). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the party asserting that a fact cannot be genuinely disputed must support that assertion with admissible evidence. Fed. R. Civ. P. 56(c).

If the moving party establishes the absence of a genuine issue of material fact, the nonmoving party must go beyond the allegations in the complaint to demonstrate

a genuine issue for trial. *Celotex*, 477 U.S. at 324. A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The court views the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

## II.    Negligence

Federal courts sitting in diversity apply substantive state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). When interpreting state law, a federal court is bound by the decision of the highest state court. *In re Kirkland*, 915 F.2d 1236, 1238-39 (9th Cir. 1990). To establish negligence under Oregon common law, a plaintiff must prove that the defendant's conduct "created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Sloan ex rel. Estate of Sloan v. Providence Health Sys. Oregon*, 364 Or. 635, 642 (2019*); Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609 (1970) (under Oregon law, an actor is negligent if he "ought reasonably to foresee that he will expose another to an unreasonable risk of harm").

The concept of foreseeability "refers to the generalized risks of the type of incidents and injuries that occurred, rather than predictability of the actual sequence of events." *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 22 (1987). Oregon law does not require a plaintiff "to precisely forecast a specific harm to a particular person." *Piazza v. Kellim*, 360 Or. 58, 80 (2016). "A dispute in a negligence action about whether an injury was foreseeable generally presents an issue of fact and, therefore, is not a likely candidate for summary judgment. There are some cases, however, in which no reasonable factfinder could find the risk of harm to be reasonably foreseeable." *Cunningham v. Happy Palace, Inc.*, 157 Or. App. 334, 337, 970 P.2d 669, 671 (1998).

The plaintiff in a negligence action "must also prove an actual causal link between the defendant's conduct and the plaintiff's harm—that is, the plaintiff must prove 'cause in fact.'" *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86 (2015). As the Oregon Court of Appeals explained, this rule "prevents jurors from speculating about causation in cases where that determination requires expertise beyond the knowledge and expertise of an ordinary lay person." *Baughman*, 200 Or. App. at 18 (citing *Howerton v. Pfaff*, 246 Or. 341, 347–48 (1967)).

## III.    Negligence *Per Se*

"[N]egligence per se claim is not a separate type of negligence claim with its own elements." *Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 781 (2023). Rather, it is a shorthand descriptor for a negligence claim in which the standard of care is expressed by a statute or rule. When a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person

under the circumstances, a violation of that statute or rule establishes a presumption of negligence. Once a violation is proven, the burden shifts to the violator to prove that he or she acted reasonably under the circumstances. A statute that sets a standard of care addresses only one element of a negligence claim; other elements remain unaffected and must be established. *Deckard v. Bunch*, 358 Or. 754, 761 n.6 (2016) (simplified).

## DISCUSSION

The parties devote significant ink to briefing whether the Oregon Court of Appeals' decision in *Moody v. Or. Cmty. Credit Union*, 317 Or. App. 233 (2022) is controlling law. There, the Court of Appeals held that emotional distress damages were available against an insurer which the plaintiff alleged had declined, in bad faith, to pay out under a small life insurance policy. Defendant argued the appellate court's decision was not controlling on this court, given that it conflicted with precedent established from the Oregon Supreme Court.

At the time of briefing, the Oregon Supreme Court had granted review, 369 Or 855, but had not issued its decision. On December 29, 2023, the highest state court affirmed that emotional distress damages may be sought under negligence per se theory, where plaintiffs show that an insurer breached its statutory duties under ORS 746.230 and establish remaining elements in a common law negligence claim. *See generally Moody*, 371 Or. at 805. Neither party has provided updated or supplemental briefing and arguments on what law controls are now mostly unhelpful.

In Oregon, notice of what constitutes reasonable conduct is a factor in determining whether a statute creates legally protected interest in prevention of

emotional harm. *Moody*, 371 Or. at 799. The state statutory scheme requiring insurers to conduct reasonable investigations into claims, and to settle claims when liability becomes reasonably clear, provides explicit notice to insurers of conduct that is required. *Moody*, 371 Or. at 799; ORS 746.230. The statutory requirements in ORS 746.230, and the emotional harm that foreseeably may occur if that statute is violated, are "sufficiently weighty to merit imposition of liability for common-law negligence and recovery of emotional distress damages." *Moody*, 371 Or. at 805.

Defendant asserts that Plaintiffs' negligence per se claim fails as a matter of law because (1) it conflicts with Oregon Supreme Court Precedent and (2) because there was no physical impact. Both those arguments are foreclosed by the Oregon Supreme Court's decision in *Moody*, which abrogated the precedent to which Defendant refers, and because Moody does not require evidence of a "physical impact" under circumstances like those alleged here. Accordingly, Defendant has not prevailed in moving for summary judgement on that basis.

Defendant argues in the alternative that Plaintiffs' claim for $1,000,000 in alleged punitive damages should be dismissed as a matter of law, because it is based on a negligence theory that fails, and because "there is no evidence of malice. Nor is there evidence of reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety and welfare of Plaintiffs." MPSJ at 14. Further, Defendant contends that "there is no actual evidence of contamination" of soot, ash, or smoke to the insulation of the house—there was only a layperson's "concern" about it. MPSJ at 13. Defendant maintains that it was not indifferent, because evidence is that its adjuster informed Plaintiffs he would

Page 11 – OPINION AND ORDER

reconsider if Plaintiffs submitted proof of "actual physical damage," but there was none at the time, and Plaintiffs have never come forward with any such proof. Id.; Kim Decl. at ¶¶ 7, 10. In Defendant's view, Plaintiffs do not allege facts, supported by evidence, to support its claim for punitive damages.

In Oregon, punitive damages are "a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others." *Andor by Affatigato v. United Air Lines, Inc.*, 303 Or 505, 517 (1987). To award punitive damages, a defendant's "degree of culpability" must be "greater than inattention or simple negligence." *Badger v. Paulson Inv. Co., Inc.*, 311 Or 14, 28 (1991). This standard is codified in ORS 31.730(1), which provides that punitive damages may be awarded only when "clear and convincing evidence" shows the defendant "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." (Emphasis added.)

Described above, and viewing that evidence in the light most favorable to the nonmoving party, *Bell,* 669 F.2d at 1284, the Court finds that there is a dispute of fact material to the resolution of this issue. The parties both proffer evidence from ServiceMaster to Defendant that the attic and underflooring insulation should be replaced. Further, Plaintiff's retained inspector reported that there was evidence of smoke damage in the attic and underfloor area that Plaintiffs allege Defendant would have discovered had they not refused to investigate. The record also contains evidence that Plaintiffs' concerns and the ServiceMaster report put Defendant on notice that the attic should be investigated. Defendant's evidence is that its first adjustor was

Page 12 – OPINION AND ORDER

trained to look for places where ventilation allowed smoke to circulate into the property and that he did not investigate for such ventilation in the areas about which Plaintiffs were concerned. A reasonable juror could find such to be an extraordinary disregard of or indifference to known or highly probable risks to others." *Andor by Affatigato.* 303 Or 505.  Defendant has not met its burden to show that it is entitled to summary judgment on this basis.

## CONCLUSION

Defendant's Motion for Partial Summary Judgment, ECF No. 9 is DENIED. The parties are directed to contact the Court to schedule a Telephonic Status Conference to discuss next steps in the case.


IT IS SO ORDERED.

Dated this 28 day of March 2024.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge